# Owensboro City Railroad Co. v. Owensboro Fuel Co.

(Decided November 18, 1919.)

### Appeal from Daviess Circuit Court.

1.  Street Railroads—Carrying Charges—No Right to Demand Before Due.—Where a street railroad company is carrying the product of a coal company under an arrangement whereby the railroad company is to receive twenty-five cents per ton freight for all coal so carried, the same to be paid not later than the 15th of the

succeeding month to that in which the service is performed, the railroad company has no right to demand its freight charges before they are due, and if it arbitrarily does so and refuses to carry other freight until the bill is paid, it is liable in damages to the coal company.

2. Frauds, Statute of—Contract to Perform Service—Termination.— A contract to perform a service which may be terminated at any time but may continue as much as two years, is not within the statute of frauds and need not be in writing.

3. Appeal and Error—Prejudicial Error—Reversal.—An error which is not prejudicial to the rights of appellant does not warrant a reversal by this court.

FUNKHOUSER & FUNKHOUSER, E. B. ANDERSON and W. FOSTER HAYES for appellant.

LITTLE & SLACK and BIRKHEAD & WILSON for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

At the time of the commencement of this action the Owensboro Fuel Company was and had been for some months previous, engaged in operating a coal mine near the city of Owensboro, to which mine the Owensboro City Railroad Company had projected its track and had been hauling and transporting all the coal which the fuel company produced at its mines to its tipple in the city of Owensboro, and to the various railroad connections in that city. The fuel company had no other means of transporting its product from the mine except over the lines of the street railroad, and the street railroad had some years previously entered into a written contract with a predecessor of the fuel company, agreeing to haul all coal produced at said mine at a given price per ton for a period of twenty years, and this contract had not expired at the time of the commencement of this action. Apparently the street railroad was carrying the coal for the fuel company under the same arrangement it had with the fuel company's predecessor. This arrangement required the fuel company to pay the freight charges on all coal carried by the city railroad not later than the 10th to the 15th of the month succeeding that in which it was carried. On February 6, 1914, the street railroad had a claim against the fuel company for $350.71 for freight on coal hauled in the month of January, and it demanded payment of the fuel company on that day, which the fuel company either declined or failed to make, whereupon the street railroad company declined to haul

any additional coal for the fuel company until this freight bill was paid. As a result the mines were closed down and this action was instituted on February 11th, by the fuel company against the street railroad company to recover $25,000.00 damages for the alleged wrongful refusal of the street railroad company to transport its coal. It will be observed from this brief statement of facts that the freights were not due under the alleged contract until the 10th of February, whereas, the railroad company demanded them on the 6th, and declined to transport the coal on that date until the freights were paid. On the 13th, however, the railroad company gave the following written notice:

"Owensboro, Ky., February 13, 1914.

"Owensboro Fuel Company,

: Owensboro, Ky.

"Gentlemen: You are hereby notified that the Owensboro City Railroad Company did not, on the 6th of February, 1914, or at any time, refuse to furnish cars for the transportation of coal, or to transport same from the Fern Hill coal mine, nor has it continuously, or at all, refused to do so, nor is it now refusing to do so.

"You are hereby notified that the Owensboro City Railroad Company is ready and willing to furnish its full equipment for the transportation of all coal mined by you at the Fern Hill mines, and transport the same under your orders and directions upon the payment by you of its freight charges therefor.

"Owensboro City Railroad Company,

By W. A. CARSON, GEN. MGR."

In the meantime, it appears that the fuel company, anxious to get its coal transported, went to the offices of the railroad company and tendered to the company $302.95 in satisfaction of the freights for the month of January, which sum was declined by the company's representative with the statement, "I have orders from Mr. Millican (superintendent) not to haul any more coal." This was on the evening of the 9th of February, and one day before the railroad company was entitled to demand its freight for the previous month. The railroad company filed its answer on March 6th, by which it traversed the material allegations of the plaintiff's petition, and in a second paragraph affirmatively alleged it was not a common carrier of freights for hire, and that it had never held itself out to the public in its dealings or

course of business as a carrier of freight for hire, and further that the city of Owensboro had enacted an ordinance some years previous which was then in force under which the street railroad "was prevented from hauling freight in bulk, or in any way except in parcels or packages," except, however, "under said ordinance granted the privilege and right to transport coal on said extension, provided the coal is hauled between the hours of 9 o'clock p. m. and sunrise."

By the third paragraph of its answer it averred that during the month of January, 1914, and up to the 10th of February, 1914, at the instance and request of plaintiff, it had furnished plaintiff cars and had transported in them and over its tracks, for plaintiff company, 1,403.1 tons of coal, and for the services rendered plaintiff by defendant in so furnishing said cars and transporting said coal, the plaintiff agreed and promised to pay defendant 25c per ton, or a total sum of $350.71, and that the fuel company had failed to pay said freights, or any part thereof, and that the same was long past due.

Its fourth paragraph avers that it, on the 13th of February, had given to the fuel company a written notice that it was ready and willing to carry its coal provided the freights were paid, as set forth in the notice above copied, and it further averred that it was ready and willing at all times to transport all coal produced by the fuel company, if its charges were paid.

By reply, issue was joined and the case coming on for trial before a jury, the following verdict was returned:

"We, of the jury, find for the plaintiff the sum of $600 less the sum of $339.71," upon which judgment was entered, and the railroad company appeals.

Appellant insists that the judgment should be reversed, (1) because it is not shown either by the pleadings or the proof that the city railroad was a common carrier of freight for hire; (2) the street railroad was under no contractual obligation to haul the coal for the fuel company; (3) the pleadings were not sufficient to support the verdict, especially in view of the fact that no contract was pleaded; (4) the only contract attempted to be proven was a verbal one, not to be performed within a year and therefore not enforceable because within the statute of frauds; (5) instructions given by the court were erroneous and prejudicial.

(1.)   It must be admitted that the petition does not aver the contract with sufficient explicitness, but the amended petition and reply state the plaintiff's cause of action very clearly, and issue having been joined by defendant, the error of the court in overruling the defendant's demurrer to the petition became a harmless one.

(2-3-4.)   The plaintiff alleged a contract for the hauling of the coal by the street railroad company, and the street railroad company admits it had such an arrangement with the fuel company and was to be paid 25¢ per ton for transporting the coal and certain other sums for carrying water and for extra service performed in one way or another.  It follows, therefore, that there was a contract, although it was not in writing, and this contract required the railroad company to transport the coal produced by the fuel company upon demand.  The freights were due and to be paid between the 10th and 15th of the month succeeding that in which the service was performed.  The railroad company had no right to demand the freights before the 10th of the succeeding month, but the failure of the fuel company to pay the freights for any given month on or before the 15th day of the succeeding month was a breach of the contract which would have warranted the railroad in declining to receive or carry additional freight.  The contract, therefore, was really one from month to month, though intended to continue in that way for a period of two years.  It might have been terminated any time by the fuel company ceasing to produce coal, as it did shortly after this suit was commenced, or by its failure to pay its freights on or before the 15th of the month, and in other ways.  Such a contract is not within the statute of frauds, and it was not necessary to its enforcement that it should have been in writing or signed by the party to be charged.

(5.)   Complaint is made of the last part of instruction No. 1, concerning the measure of damages.  The instruction fails to limit the amount of recovery of the fuel company to the number of tons of coal which the fuel company might have produced and offered for shipment during the period in which the railroad company declined to transport or handle the coal over its line, the only limitation being $4,000.  The evidence, however, on the subject is confined to the number of tons that the company might reasonably have produced and marketed but for the shutdown, and the jury must have so read

and understood the instruction, because it confined its verdict to $600, and subtracting from that the indebtedness of the fuel company, making its verdict only $260, which appears to be reasonably sustained by the evidence introduced for the fuel company. While the instruction is erroneous, it does not appear to have adversely affected the railroad company, and this court is not warranted in reversing a judgment for an error which did not prejudice the rights of appellant. Upon the whole, we are of opinion that the trial court did not commit reversible error, and that right and justice prevailed.

Judgment affirmed.